# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAURICE LAMAR SMITH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CCB-18-3195 |
| WARDEN MAJOR C. ROWE,[1] | * | |
| CORRECT CARE SOLUTIONS, | | |
| D.F.C. NISER, | * | |
| D.F.C. FRIES, | | |
| D.F.C. VERMILLION, | * | |
| D.F.C. BURKETT, | | |
| D.F.C. DELLOSO, | * | |
| D.F.C. VANDERHUTT, | | |
| DR. JOHN DOE, | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Self-represented plaintiff Maurice Lamar Smith, currently incarcerated at the Washington County Detention Center ("WCDC") in Hagerstown, Maryland, brought this civil action pursuant to 42 U.S.C. § 1983 against WCDC Warden Major Craig Rowe and WCDC correctional officers Niser, Fries, Vermillion, Burkett, Delloso, and Vanderhutt (collectively, the "Correctional Defendants"), as well as Correct Care Solutions, Inc. ("Correct Care") and Dr. John Doe. (ECF No. 1). In his unverified Complaint, Smith asserts a violation of his constitutional rights arising from the conditions to which he is subjected at WCDC and the defendants' refusal to provide him with necessary dental treatment. (*Id.* at 2–7). He seeks monetary damages totaling $2,625,000. (*Id.* at 8).

In March 2019, the Correctional Defendants filed a Motion to Dismiss or, in the

---

[1] The docket sheet erroneously lists "Warden" and "Major C. Rowe" as two separate defendants.

Alternative, for Summary Judgment (ECF No. 9) and a Motion to Seal one of the exhibits in support of the dispositive motion (ECF No. 10).[2] On March 27, 2019, Smith filed correspondence, which the court will construe as a response to the motion. (ECF No. 12). The Correctional Defendants replied. (ECF No. 13). On February 20, 2020, Correct Care filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 19). Smith was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the defendants' motions could result in dismissal of the Complaint. (ECF Nos. 11, 21). Smith filed nothing further.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons explained below, the court will dismiss the conditions claims and grant the defendants' motions for summary judgment on the dental claims. The Correctional Defendants' Motion to Seal three pages of Smith's medical records will be granted. Correct Care has attached to its motion Smith's extensive medical records (ECF No. 19-3); those records will also be sealed. Dr. John Doe was not served with the Complaint, and the claims against him will be dismissed without prejudice.

## Background

Smith was brought into custody at WCDC on May 17, 2018. (Medical Records at 1, ECF No. 19-3). The following day, he was placed on suicide watch due to suicidal ideation and, at his request, on protective custody due to the charges brought against him. (Inmate Records Selection at 1–4, ECF No. 9-6). On May 21, 2018, Smith was taken off suicide watch but remained on protective custody status. (*Id.* at 5).

WCDC policy mandates that an inmate in protective custody will be allowed a total period of two hours for recreation on a daily basis. (Rowe Aff. ¶ 3, ECF No. 9-3). How much recreation

---

[2] The three-page exhibit contains Smith's medical and dental records. *See* ECF No. 9-7.

2

time is actually allowed, however, depends on the manpower available for coverage and the number of inmates who are in protective custody. (*Id.*). Therefore, when there are too many inmates in protective custody, a shorter time will be allowed for each inmate to allow all inmates comparable amounts of time for recreation each day. (*Id.*). According to Warden Rowe, during the time in which Smith has been incarcerated at WCDC, there have been an unusually large number of inmates charged with sex offenses who have been placed in protective custody for their own safety. (*Id.*).

Smith claims that while incarcerated at WCDC, he is subjected to "exceedingly long lock-in times" and "denied meaningful exercise." (Compl. at 2, ECF No. 1). Specifically, he alleges that: on July 15, 2018, Burkett denied him recreation time; on July 18, 2018, Delloso denied him recreation time; on July 22, 2018, Niser denied him meaningful exercise; on July 24, 2018, Fries denied him meaningful exercise; on August 1, 2018, he was provided only 30 minutes of recreation time; on August 10, 2018, Vermillion denied him meaningful exercise; on August 22, 2018, he was provided only five minutes of recreation from 2:55–3:00 a.m.; on September 6, 2018, he was denied recreation during the 2–8 a.m. shift; on September 7, 2018, he was denied recreation during the 4 p.m.–12 a.m. shift; on September 18, 2018, Vanderhutt denied him recreation during the evening shift; and on September 21, 2018, he was provided only 25 minutes of recreation time, from 5:30–5:55 p.m. (*Id.*). Smith asserts that the denial of recreation time has caused him weight gain, muscle degeneration, depression, elevated blood pressure, and joint pain. (*Id.*).

Smith also claims that there are "excessive black mold spores" in the shower area and other places within WCDC that have caused him eye irritation, sneezing, coughing, nasal congestion, phlegm, difficulty breathing, and skin rashes. (*Id.* at 5–6). According to Smith, Warden Rowe was aware of the black mold but failed to remedy the problem. (*Id.*). Warden Rowe states that

3

WCDC has cleaning crews that regularly clean the showers with a bleach product. (ECF No. 9-3 ¶ 2). In addition, WCDC has passed every Maryland Health Department inspection during his time as Warden, and no inspection has noted an issue with black mold in the WCDC showers. (*Id.*).

Lastly, Smith alleges that the defendants have failed to provide him with adequate medical care at WCDC. (ECF No. 1 at 3). He states that in June 2018, he was diagnosed with periodontitis, a visible cavity in a molar, and the eruption of four wisdom teeth, which caused severe pain and bleeding gums. (*Id.*). Smith claims that Correct Care and Dr. John Doe, both of whom are responsible for providing dental and medical services at WCDC, refused to pay for dental work except for extractions. (*Id.* at 3–4). Smith also alleges that Warden Rowe refuses to change "his policy of not providing preventative and diagnostic care for fillings [and] cleanings." (*Id.* at 4).

Smith's WCDC inmate file indicates that he was scheduled to see the dentist on October 13, 2018, but it was reported that he refused and was thus removed from the dental list. (ECF No. 9-3 ¶ 6; ECF No. 9-4 at 2). On October 15, 2018, Smith filed an inmate grievance at WCDC regarding his dental complaints (ECF No. 9-4) and filed the instant Complaint in this court. Pursuant to the Inmate Grievance Procedure at WCDC, any grievance is submitted to a Captain, who investigates the matter and responds. (ECF No. 9-3 ¶ 4). By letter dated November 1, 2018, the Captain informed Smith that after the dentist left for the day on October 13, 2018, it was discovered that it was another inmate with the same last name who had refused to see the dentist; thus, Smith was advised that he would be scheduled to see the dentist on the next available day, which was November 4, 2018. (*Id.* ¶ 7). Smith subsequently saw the dentist as rescheduled, at which time he consented to tooth extraction and was given Motrin for pain relief. (Medical Records at 1, ECF No. 9-7).

Immediately after receiving the Captain's response to his grievance, Smith noted an appeal to Warden Rowe. (Appeal, ECF No. 9-5). By correspondence dated November 12, 2018, Warden Rowe responded, noting that Smith had been seen by the dentist on the next available date of November 4, 2018. (*Id.* at 2).

Smith did not file an inmate grievance regarding recreation times or his allegation of black mold. (*See* ECF No. 9-3 ¶ 8).

**Standards of Review**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original).

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Analysis**

At the time of the incident giving rise to this case, Smith was a pretrial detainee in Washington County, Maryland. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F. Supp. 3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

**I. Conditions Claims**

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *King v. Rubenstein,* 825 F.3d 206, 217–18 (4th Cir. 2016) (citation omitted). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To the extent Smith alleges that his recreation time has been greatly limited or that there is black mold within WCDC, he raises conditions claims.

In response, the Correctional Defendants raise the affirmative defense that Smith has failed to exhaust his administrative remedies. (Mot. at 9–10, ECF No. 9-1). If Smith's claim has not

been properly presented through the administrative remedy procedure, it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, the term "prisoner" includes pretrial detainees. *See* 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See id.* at 219–20. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

A prisoner, however, is not required to exhaust an administrative remedy that is not "available" to him. *See Ross,* 136 S. Ct. at 1859; *Moore*, 517 F.3d at 725. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Accordingly, a federal court may hear an inmate's claim where he "utilized all available remedies in accordance with the applicable procedural rules, so that prison officials [had] been given an opportunity to address

7

the claims administratively." *Id*.

At WCDC, there is an Inmate Grievance Procedure that is available to all inmates. (ECF No. 9-3 ¶ 4). To access the Procedure, an inmate completes and submits an Inmate Request Form indicating why a Grievance Form is needed. (*Id.*). If the inmate receives a Grievance Form, the inmate completes and submits it to a Captain, who investigates the matter and responds to the inmate within 15 working days or assigns another staff member to do so. (*Id.*). If the inmate is not satisfied with the response, the inmate may send a written appeal to the Warden within seven days. (*Id.*). The Warden must then notify the inmate of his decision in writing within 15 working days. (*Id.*).

Here, it appears that Smith was aware of the Inmate Grievance Procedure, as he filed a grievance regarding the alleged denial of dental care. However, contrary to Smith's allegation in his Complaint, nothing in the record suggests that he filed grievances regarding his other claims. After reviewing Smith's inmate file, Warden Rowe did not find an inmate grievance relating to black mold or the allegation that Smith is not receiving adequate opportunity for exercise or recreation. (ECF No. 9-3 ¶ 8). Smith did not dispute this finding in his response to the Correctional Defendants' motion. (*See* ECF No. 12-2). As discussed above, the PLRA requires that prisoners exhaust all available remedies properly. Although the grievance process was available to Smith, he did not pursue it. Thus, the court will dismiss Smith's conditions claims.

## II. Conversion of the Motion to Dismiss to one for Summary Judgment

The defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md.

2011).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because the defendants filed motions titled "Motion to Dismiss or, in the Alternative, for Summary Judgment," along with documents in support, Smith was on notice that the court could treat the defendants' motions as ones for summary judgment and rule on that basis.  Accordingly, the court will review Smith's remaining claim under the Rule 56(a) standard.

### A. *Deliberate Indifference*

Smith claims that the defendants have denied him adequate dental and medical care. Deliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause of the Fourteenth Amendment.  *Young*, 238 F.3d at 575 (citing cases).  To state a claim for denial of medical care, a plaintiff must demonstrate that the actions or omissions of the defendants amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that the prisoner plaintiff was suffering from a serious medical need (objective component) and that the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available (subjective component).  *See Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating

9

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (citation and quotation marks omitted). With respect to the subjective component, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result. . . . A prison official acts with deliberate indifference if he knows of and disregards an excessive risk to the inmate's health or safety." *Id*. at 211 (citations, quotation marks, and brackets omitted).

Here, even assuming that Smith's dental issues were sufficiently severe that they created a serious medical need, the record does not support a finding that the defendants acted with deliberate indifference to that need. Two days after correctional staff failed to bring Smith to his dental appointment, Smith filed an inmate grievance. Within 15 working days, the Captain investigated the matter and responded to Smith, noting that there was a misunderstanding regarding another inmate with the same last name. At most, a correctional officer was negligent for failing to verify the identity of the scheduled inmate. *See Heyer*, 849 F.3d at 211 (mere negligence insufficient to show deliberate indifference). In any event, WCDC rescheduled Smith's appointment with the dentist for November 4, 2018, at which time Smith consented to tooth extraction, and was given Motrin for pain relief. (ECF No. 9-7 at 1). There is no evidence that Warden Rowe, Correct Care, or its staff were deliberately indifferent to Smith's needs or that Smith's dental condition was ignored. On these facts, viewed most favorably to Smith, he cannot demonstrate that the defendants acted with deliberate indifference to Smith's serious medical needs.[3]

---

[3] Correct Care also notes that to the extent Smith attempts to raise a claim of medical malpractice or negligence, he failed to comply with the mandatory prerequisites of filing such a claim because there is no evidence that he submitted the claims to the Maryland Health Claims Arbitration Board as required. (ECF No. 19-1 at 8–9 (citing Md. Code Ann., Cts & Jud. Proc. § 3-2A-04 *et seq.*)).

### B. Extraction Policy

To the extent Smith alleges that Correct Care failed to properly address his dental concerns by carrying out Warden Rowe's policy against preventative, diagnostic, and follow up care based on the cost of the procedures, his claim also fails. Section 1983 allows individuals to sue in federal court any person who violates their federally protected rights while acting under the color of law. *See* 42 U.S.C. § 1983. Correct Care is a private corporation that, at the time of the events in question, had a contract to provide health care to WCDC detainees. Accordingly, Correct Care may be held liable under § 1983 only to the extent that it has a custom or policy that causes a violation of the Constitution or laws of the United States, such as a policy of deliberate indifference to serious medical needs. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999) (applying the holding of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), to claims that a private corporation's officials caused the deprivation of federal rights).

Smith seeks to hold Warden Rowe and Correct Care liable for violating his constitutional rights by providing dental treatment that includes only tooth extractions. Accordingly, he must establish that the defendants' acts or omissions violated his constitutional rights and that the violation arose from an unconstitutional pattern, practice, custom, or policy that preventative and diagnostic dental services would not be provided at WCDC except for extractions. *See Austin,* 195 F.3d at 727–28. The facts, viewed most favorably to Smith, do not indicate that Smith's tooth was extracted pursuant to an unconstitutional policy. In his Complaint, Smith stated that he suffered from periodontitis, erupting wisdom teeth, and a cavity. Following the filing of this suit, Smith was seen by a dentist, who noted that one of Smith's teeth was decayed and, although restorable, could be extracted because it was a wisdom tooth. (ECF No. 9-7 at 1). Smith read the

proposed treatment and consented to the extraction. (*Id.*). From this record, it does not appear that the tooth extraction was performed pursuant to a policy implemented by the defendants; rather, it seems that the dentist evaluated Smith's dental problems and recommended a solution to which Smith consented. Moreover, nothing in the record reveals that Smith was subjected to additional tooth extractions during the time period at issue here. He was seen by Correct Care staff regarding his dental complaints on July 2, 2018, and September 20, 2018, at which time he was evaluated, given pain medication, and scheduled for a dental visit. (ECF No. 19-3 at 171–76).

As Smith has not provided sufficient evidence to show that the defendants had a policy or custom that resulted in a deprivation of his constitutional rights, the defendants are entitled to summary judgment on his dental claims.

## Conclusion

For the foregoing reasons, Smith's conditions claims and any claims against Dr. John Doe will be dismissed. The defendants will be granted summary judgment on Smith's claims regarding his dental treatment.

A separate Order follows.

_____  _____
Date                    Catherine C. Blake
                        United States District Judge